UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT CURTIS HALL, JR.,

    Plaintiff,

v.                                        Case No.:   3:23-cv-1141-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Robert Curtis Hall, Jr. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the Commissioner's Decision**

    **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

## B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the administrative law judge, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are

reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The Commissioner must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the Commissioner must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the Commissioner must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the Commissioner finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the Commissioner must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the Commissioner must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

**C.   Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits on February 3, 2021, alleging disability beginning October 1, 2019. (Tr. 17, 53, 224-

228). Plaintiff later amended the onset date of disability to December 30, 2011.[1] (Tr. 17, 231). The application was denied initially and on reconsideration. (Tr. 53, 75). Plaintiff requested a hearing and on January 5, 2023, a hearing was held before Administrative Law Judge Gregory Froehlich ("ALJ"). (Tr. 33-52). On February 16, 2023, the ALJ entered a decision finding Plaintiff had not been disabled from December 30, 2011, the alleged onset date, through December 31, 2011, the date last insured. (Tr. 17-26). On August 30, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff began this action by Complaint (Doc. 1) filed September 28, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

**D.     Summary of ALJ's Decision**

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of December 30, 2011, through the date last insured of December 31, 2011. (Tr. 19). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "left shoulder degenerative joint disease, status-post Bankart repair and tinnitus." (Tr. 20). At step

---

[1] The ALJ recounted that Plaintiff originally alleged an onset date of October 2019, "which changed only after he learned that he was not insured after December 2011." (Tr. 21).

three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. 21).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except with occasional postural activities (climb/balance/stoop/kneel/crouch/crawl). Occasional overhead reaching. Limited to work settings with a noise level of 3 or moderate. Limited to performing work which needs little or no judgment to do simple duties that can be learned on the job in a short time (up to and including 30 days), able to deal with the changes in a routine work setting, and able to relate adequately to Supervisors with occasional Coworker and General Public contact.

(Tr. 21-22).

At step four, the ALJ determined that through the date last insured, Plaintiff was not capable of performing his past relevant work as an insurance sales agent, or manager of an insurance agency. (Tr. 24). At step five, the ALJ found that considering Plaintiff's age (44 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 24-25).

Specifically, the vocational expert testified that a person with Plaintiff's limitations could have performed such occupations as:

(1) Marker, DOT 209.587-034,[2] light, SVP 2

(2) Ticketer, DOT 229.587-018, light, SVP 2

(3) Routing clerk, DOT 222.687-022, light, SVP 2

(Tr. 25). The ALJ concluded that Plaintiff had not been under a disability from December 30, 2011, the alleged onset date, through December 31, 2011, the date last insured. (Tr. 25).

## II. Analysis

On appeal, Plaintiff raises three issues:

(1) Whether the ALJ erred in finding a significant number of jobs exist that Plaintiff could perform, given that the identified jobs conflict with the RFC, the marker position is obsolete, the job estimates pertained to a time period more than a decade after the date last insured, and the method used by the vocational expert to determine the numbers of jobs that exist is not reliable or reasonable;

(2) Whether the ALJ erred in his step-three determination because he said no medical expert opined that Plaintiff's impairments met or equaled a listing, given that Dr. Vonetes opined to conditions that met Listings 12.04 and 12.06; and

(3) Whether the ALJ failed to properly resolve conflicts between the vocational expert's testimony and the DOT, given that the RFC and hypothetical question limit Plaintiff to occasional overhead reaching

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

> yet the DOT specified that ticketer requires constant reaching and marker and routing clerk require frequent reaching.

(Doc. 22, p. 1). Because the first and third issue relate to jobs, the Court begins with the second issue about Dr. Vonetes' opinion on whether Plaintiff met a listing and then turns to the remaining issues.

### A. Listings

At step three in the decision, the ALJ found that through the date last insured, "[n]o medical expert has opined the claimant's impairments, considered singly and in combination, are equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments." (Tr. 21). Plaintiff argues that contrary to this statement, Alfred D. Vonetes, Psy.D. found that Plaintiff met Listings 12.04 (depression, bipolar, and related conditions) and 12.06 (anxiety and obsessive-compulsive disorders). (Doc. 22, p. 17-18).

At step three, the burden lies with Plaintiff to show that he has an impairment that meets or medically equals a listed impairment. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008). For an impairment to meet a listing, a plaintiff must show that it meets *all* the specified medical criteria. *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 840 (11th Cir. 2019) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). If an impairment meets only some criteria, then it will not qualify, no matter the severity of the impairment. *Id.* To meet a listing, a

plaintiff must have a diagnosis included in a listing and provide medical reports documenting that the conditions meet the specific criteria of a listing and the duration requirement. *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). If a plaintiff satisfies all of the criteria of a listing, then he is considered disabled. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (citing 20 C.F.R. § 416.920a)(4)(iii), (d).

Here, Plaintiff relies solely on Dr. Vonetes' opinion to support his argument that he met Listings 12.04 and 12.06 and the ALJ erred in failing to acknowledge Dr. Vonetes' findings. (Doc. 214-19). Dr. Vonetes, however, completed his evaluations in December 2022, nearly 11 years after the date last insured of December 31, 2011. (Tr. 501-515). Dr. Vonetes was instructed: "to determine [Plaintiff's] **present** level of emotional and psychological functioning . . ." (Tr. 501 (emphasis added)). The ALJ's finding pertained to the relevant time period and Dr. Vonetes' opinion focused on the present time period, nearly eleven years later. Thus, there is no inconsistency in the ALJ's statement that through the date last insured, no medical expert opined Plaintiff's impairments or combination of impairments equaled in severity to the criteria of any listed impairment.

Further, in the decision, the ALJ discussed Dr. Vonetes' findings and determined:

> The opinions of Dr. Vonetes are unpersuasive for the period at issue due to lack of supportability and consistency. The

claimant's records do not reflect mental health complaints or persistent pain prior to the date last insured, and Dr. Vonetes did not identify any clinical findings from the claimant's relevant treatment records to support the existence of the mental health impairments prior to the date last insured. Dr. Vonetes opined,

> Excessive thoughts, feelings/behaviors related to the somatic symptoms or associated health concerns as manifested by the following: disproportionate and persistent thoughts about the seriousness of one's symptoms; Persistently high level of anxiety about health or symptoms; and excessive time and energy devoted to these symptoms or health concerns is related to Somatic Symptom Disorder. His symptoms of depressed mood, anhedonia, loss of motivation, and thoughts of suicide are related to Major Depressive Disorder.

The claimant's treatment records prior to the date last insured and within 12 months after the date last insured do not reflect any of those identified symptoms or behaviors (Ex. 6F). Further, the opinions are not consistent with the claimant's ongoing work activity, as Dr. Vonetes apparently believed that the claimant was unemployed at the time of the examination and had not worked since December 1, 2011. Indeed, the claimant originally alleged an onset date of 2019, which changed only after he learned that he was not insured after December 2011. Lastly, the opinion is not consistent with the finding of no service-connected mental disability from the VA prior to 2021 (Exs 3E and 8E).

(Tr. 21). The ALJ clearly considered Dr. Vonetes' opinion, but found it unpersuasive for the reasons set forth above, one of which was that the opinion was inconsistent with and unsupported by the medical and other evidence of record during the relevant time period. Substantial evidence supports the ALJ's step three findings.

### B.   Number of Jobs and Any Unresolved Conflicts between the DOT and the Vocational Expert's Testimony

Within the first and third issues, Plaintiff raises a number of sub issues. Plaintiff argues that the jobs identified by the vocational expert conflict with the lifting limitations in the RFC, the marker position is obsolete, the job-number estimates pertain to the wrong time period, the method used by the vocational expert to determine job numbers is unreliable or unreasonable, and the vocational expert's testimony conflicts with the DOT regarding reaching limitations. (Doc. 22, p. 6, 19). The Court will address each issue in turn.

#### 1.   Lifting Limitations

Plaintiff argues that the jobs identified by the vocational expert and cited by the ALJ do not comply with the lifting limitations in the RFC for light work. (Doc. 22, p. 7). Plaintiff proceeds to argue that the DOT is out-of-date, SSA paid the U.S. Bureau of Labor Statistics to develop the Occupational Requirements Survey ("ORS"), and data from the ORS show that the jobs of marker, ticketer, or routing clerk require lifting 50 or more pounds, while light work only requires lifting 20 pounds or less. (Doc. 22, p. 7-8).

The ALJ limited Plaintiff to light work. (Tr. 21). Under the regulations, light work has a lifting requirement of no more than 20 pounds. *See* 20 C.F.R. § 404.1567(b). In the DOT, the jobs of marker, ticketer, and routing clerk all fall within the light exertional level of work. *See* 209.587-034 Marker, DICOT 209.587-034,

1991 WL 671801; 229.587-018 Ticketer, DICOT 229.587-018, 1991 WL 672150; and 222.687-022 Routing Clerk, DICOT 222.687-022, 1991 WL 672133. In addition, the vocational expert testified that an individual limited to the light exertional level is able to perform these jobs. (Tr. 48-49). In accordance with the regulations, both the ALJ and the vocational expert properly relied on the DOT descriptions for these jobs. *See* 20 C.F.R. § 404.1566(d). Thus, remand is not warranted.

### 2. Marker Position

Plaintiff contends that the job of marker is obsolete. (Doc. 22, p. 9). In support, Plaintiff cites a district court case from another circuit that found this job obsolete and found the vocational expert should have consulted a more recent source for job information. (Doc. 2 p. 9, (citing *Applefeld v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-517, 2018 WL 1136571, at *5, n.1 (D. Md. Mar. 1, 2018))). As cited above, the regulations still include the DOT as an acceptable source for job data evidence and the vocational expert's testimony complied with the regulations. *See* 20 C.F.R. § 414.1566(d). Thus, remand is unwarranted on this issue.

### 3. Number of Jobs in 2011

Without any citation to legal authority, Plaintiff argues that the ALJ was required to address whether there were a significant number of jobs that Plaintiff could have performed at the time of the alleged onset date, December 30, 2011,

through the date last insured of December 31, 2011. (Doc. 22, p. 10). Instead, Plaintiff claims the vocational expert testified as to available jobs at the time of the hearing in 2023. (Doc. 22, p. 10). At the hearing, the vocational expert testified about job numbers in the national economy for the jobs of marker, ticketer, and routing clerk. (Tr. 49). Plaintiff's counsel did not challenge the vocational expert's testimony about job numbers for the relevant period.

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted) (citing *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job

numbers. *Id.* Here, Plaintiff did not challenge the vocational expert's testimony at the hearing and provided no alternative findings as to job numbers, but instead merely speculates. Without some indication that the vocational expert's job numbers do not apply to the relevant period and without citation to any legal authority by Plaintiff, remand is not warranted on this issue.

### 4. Vocational Expert Testimony on Job Numbers

Plaintiff argues that the vocational expert relied on an improper method to estimate job numbers in the national economy for the jobs of marker, ticketer, and routing clerk. (Doc. 22, p. 11-12). As a result, Plaintiff claims that the vocational expert's testimony does not constitute substantial evidence on which the ALJ could rely. (Doc. 22, p. 11-13).

At the hearing, Plaintiff's counsel questioned the vocational expert on the sources for the job numbers. (Tr. 51). The vocational expert responded:

> I look at the Occupational Employment Statistics which is put out by the Department of Labor, the Bureau of Labor Statistics, and they — what they do, I'm sure you know this, is they group the occupations, give the occupations into subcategories and occupational classifications, each category has various numbers of occupations in it, I look at the number of occupations and the number of employment in that grouping and just pretty much do a straight mathematical division for it, so if you have 10, let's say you had 10 occupations in the category, and there's 1,000, you would probably have 100 occupations.

(Tr. 51). The vocational expert also explained that he did not simply divide the number of jobs by the number of occupations. (Tr. 51-52). He testified that some

subcategories of jobs are obscure and others more prevalent, so he adjusts the numbers accordingly. (Tr. 52).

Plaintiff claims that the method the vocational expert used of dividing the number of jobs by the occupation category, or "equal distribution" does not produce accurate job numbers, citing *Ragusa v. Comm'r of Soc. Sec.*, No. 22-11935, 2023 WL 6319307 (11th Cir. Sept. 28, 2023). (Doc. 22, p. 11-12). In *Ragusa*, Plaintiff appealed the district court's order affirming the denial of his application for disability benefits. *Id.* at *1. The plaintiff contended that the vocational expert relied on flawed methodology in determining the estimated number of available jobs for each position identified by the vocational expert. *Id.* at *2. The vocational expert used the same type of methodology as here, the equal distribution method. *Id.* at *3. The vocational expert further relied on the software programs of JobBrowser and SkillTRAN to assess job-incidence data and relied on his professional experience. *Id.* The Eleventh Circuit held the plaintiff failed to demonstrate that the vocational expert's methodology for estimating the number of available jobs was impermissibly inconsistent or unreliable. *Id.* "Nor has Ragusa presented evidence or data contradicting the VE's job estimates. On this record, we conclude that the VE's testimony about the availability of jobs in the national economy was sufficiently reliable to constitute substantial evidence supporting the ALJ's determination at step five." *Id.*

Plaintiff argues that unlike *Ragusa*, the vocational expert here did not use JobBrowser Pro and, if he would have used this program, the job numbers for the ticketer were significantly lower than the vocational expert's testimony. (Doc. 22, p. 12). Indeed, the vocational expert here did not use JobBrowser Pro program, but nothing in the regulations or legal authority requires it. The vocational expert did begin by using the equal distribution method, but also used his professional judgment to consider whether the jobs were obscure or more prevalent and made any needed adjustments. (*See* Tr. 51-52). Further, Plaintiff did not present any evidence of data by an expert to contradict the vocation expert's testimony. Substantial evidence supports the ALJ's reliance on the vocational expert's testimony about job numbers.

     **5.    Conflict Between Vocational Expert's Testimony and DOT**

Plaintiff argues that the RFC limitation to occasional overhead reaching conflicts with the DOT requirement of constant reaching for the ticketer job and frequent reaching for the marker and routing clerk jobs. (Doc. 22, p. 21). Plaintiff argues that neither the vocational expert nor the ALJ resolved these apparent conflicts. (Doc. 22, p. 21).

For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty

means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

In the hypothetical posed to the vocational expert, the ALJ included a limitation for occasional overhead reaching. (Tr. 48). The vocational expert found an individual with this limitation as well as the other limitations listed by the ALJ was capable of performing the jobs of marker, ticketer, and routing clerk. (Tr. 49). The ALJ asked the vocational expert whether there were any conflicts between his testimony and the DOT. (Tr. 50). The vocational expert responded:

> There is no conflict. With reference to the off-task behavior and the absentee behavior, and reaching above the shoulders, that comes from my observation, my dealing with employees/employers, my understanding of how work is performed, the reference to reaching in the DOT does not distinguish the direction of reaching, so that comes from my observation and my understanding of how these occupations are done.

(Tr. 50). Thus, the vocational expert determined based on his professional experience, observation, and understanding of these occupations that even though the DOT does not distinguish between the types of reaching, these three jobs would require only occasional overhead reaching. As a result, there is no conflict between

the DOT requirements for these jobs and the vocational expert's testimony because the DOT does not specify the type of reaching, such as overhead reaching. Even if a conflict existed, the vocational expert's testimony clarified that these jobs do not require more than occasional overhead reaching. Substantial evidence supports the ALJ's step five job findings.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties